# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5236 | **DATE** | 8/27/2004 |
| **CASE TITLE** | Wilson Sporting Goods Co. vs. Penn Partners | | |

**MOTION:**   [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due _____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]    Enter Memorandum Opinion and Order: Wilson's motion to compel arbitration (30-2) is denied. Accordingly, there is no need to stay the counterclaim and we deny this motion (30-1) as well.

(11)  ■  [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | AUG 3 1 2004 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | docketing deputy initials | | 62 |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | 8/27/2004 | | |
| | | | date mailed notice | | |
| GL | courtroom deputy's initials | | GL | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILSON SPORTING GOODS CO., )
A Delaware corporation, )
)
Plaintiff-Counterdefendant, )     03 C 5236
)
v. )
)
PENN PARTNERS, a California )
General partnership, )
)
Defendant-Counterplaintiff. )

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Presently before us is Wilson Sporting Goods Co.'s ("Wilson") motion to compel arbitration

of whether Wilson breached the Lease Agreement ("Lease") between it and Penn Partners ("Penn").[1]

For the reasons given below, Wilson's motion is denied.

Background

Wilson has been leasing improved property in River Grove, Illinois (the "River Grove" property)

from Penn pursuant to the Lease, as amended, dated December 21, 1984. In addition, Wilson had an

agreement with Penn, which allowed Wilson to sublet the River Grove property subject to certain

conditions, including environmental provisions. These environmental provisions were contained in the

Agreement Relating to Sublease ("ARS"). The sublet agreement and the ARS were subsequently made

part of the Lease. Around July 1, 1993, Wilson and Penn entered into an Option Agreement giving

---

[1] Wilson concurrently moved to stay litigation of the counter-claim pending arbitration of
the alleged breach of the Lease.

Wilson the option to purchase the property it had been leasing for $4.75 million ("Option Agreement"). The Option Agreement had to be exercised before June 1, 2003. In a Side Letter to the Option Agreement ("Side Letter"), also dated July 1, 1993, the parties clarified the terms of the Option Agreement and consented to arbitrate any alleged defaults of the Lease. The Side Letter contained language allowing for easier compliance with the environmental provisions found in the ARS.

A few weeks before the June 2003 deadline, Wilson telephoned Penn advising it that Wilson would be exercising its option. Penn refused to honor the agreement, citing, among other things, material breaches of the environmental provisions found in the ARS. Wilson then sued defendant Penn to specifically enforce the Option Agreement to purchase the River Grove property. Penn filed a counterclaim, asserting that Wilson's prior material breach of the Agreement Relating to the Sublease and the Side Letter to the Option Agreement, both which are incorporated into the Lease, relieves it from its obligations under the Option Agreement. Specifically, Penn contends that Wilson violated several of the environmental provisions contained in the ARS. Wilson now seeks to compel arbitration pursuant to the Federal Arbitration Act 9 U.S.C. § 4, of Penn's claims regarding Wilson's alleged breach of the Lease, including the ARS, according to the arbitration clause contained in the Side Letter. Therefore, the issue before us is whether Wilson can compel arbitration of Penn's claim, alleging a breach of the Lease. If it can, and the arbitrator decides Wilson has not breached the Lease, Wilson argues it then can enforce the Option Agreement, provided Penn has no other objections.

## Discussion[2]

In considering whether this court should grant Wilson's request, we first must determine the scope of the mandatory arbitration clause because parties cannot be compelled to arbitrate issues they

---

[2] This court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because Wilson is a Delaware corporation with its principal place of business in Chicago, Illinois, Penn is a California general partnership, and the amount of the dispute exceeds $75,000.00.

have not previously agreed to arbitrate. *See Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002); *Kresock v. Bankers Trust Co.*, 21 F.3d 176, 178 (7th Cir. 1994). If we decide that the breach of the ARS falls within the scope of the arbitration clause, we must then decide whether Wilson has waived its right to arbitrate. *Welborn Clinic,* 301 F.3d at 637 (explaining that the right to arbitrate may be waived just like any other contractual right).

<u>Scope of the Arbitration Clause</u>

Arbitration is a contractual matter; thus, when determining the scope of an arbitration provision, federal courts apply state law principles of contract formation. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002). Under Illinois law,[3] arbitration agreements are to be interpreted according to the "clear language of the agreement and [the] intentions expressed in that language." *Salsitz v. Kreiss*, 761 N.E.2d 724, 731 (Ill. 2001). Although federal policy favors arbitration, parties may not be compelled to arbitrate those issues they have not previously agreed to arbitrate. *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000).

The arbitration clause found in the Side Letter reads that "[i]n the event of the alleged default under the Lease," the Lease will not terminate until both parties "have met face-to-face and in good faith…to cure the alleged default" and, failing agreement regarding the alleged default, "the parties have submitted themselves as quickly as possible to binding arbitration in Cook County, Illinois under the jurisdiction and in accordance with the rules of the American Arbitration Association, and have received

---

[3] The subject matter of this contract is located in Illinois and the parties agreed to arbitration in Illinois. Penn accordingly applies Illinois law to the analysis and Wilson has raised no objections to the application of Illinois law to the inquiry. In fact, Wilson applies Illinois law in its Reply as well. Therefore, we apply Illinois contract law in our analysis. *See Rosenblum,* 299 F.3d at 662 n.2 (applying the law of Illinois to determine whether arbitration clause applied to a given dispute because neither party argued that the law governing the contract (Canadian) differed materially from Illinois and both parties utilized Illinois law in their arguments before the district court); *Tinder v. Pinkerton Security*, 305 F.3d 728, 733 (7th Cir. 2002) ("Because all relevant events occurred in Wisconsin, Wisconsin law determines the validity of the [arbitration] agreement.").

a plan from the arbitration panel which in the panel's judgment is consistent with the spirit of the above paragraph." Wilson has its principal place of business in Cook County, Illinois. Wilson contends the arbitration provision was included in anticipation of the very same situation as the one before the Court, in which one party claims breach of the Lease in order to avoid its obligations under the Option Agreement. The Option Agreement provides that if the Lease is terminated-for example by material breach-the Option Agreement is automatically null and void. The addition of this provision indicates the parties likely provided for arbitration to adjudicate alleged violations of the Lease to avoid the costly court processes associated with resolving such disputes. The question, then, is which documents are encompassed in the term included in arbitration clause, "the Lease."

Over the course of their dealings, the parties have amended and supplemented the original Lease such that the ARS is now considered part of the Lease. (*See, e.g.,* Side Letter ¶ 2; Penn's Counterclaim ¶¶ 13-15; *see also, e.g.,* Compl. Ex. B to Ex. A). This document is significant for our purposes because the ARS contains the environmental obligations Penn claims Wilson violated.[4] As the ARS was part

---

[4] Although the Side Letter itself contains the arbitration clause, in essence, the Side Letter merely contains provisions allowing Wilson to more easily fulfill its environmental obligations under the ARS subject to certain stipulations. These provisions have no bearing on whether Wilson breached its obligations under the ARS; it is possible that it could fulfill its obligations in a less convenient manner than that specifically provided for in the Side Letter. Thus, we find that while the Side Letter falls within the arbitration provision, determining whether Wilson breached those obligations will not effect our analysis of whether Wilson materially breached the ARS (which modified the lease) and is thereby released from its obligations under the Option Agreement. Nonetheless, Penn makes two arguments regarding the scope of the arbitration clause contained in the Side Letter. First, it argues that the parties "did not agree to have an arbitrator decide whether breaches of the 1993 Side Letter and ARS resulted in a vitiation of Penn Partners' obligations under the Option Agreement." (Mem. in Opp. to Pl's Mot. to Stay Counterclaim and Compel Arbitration, 5). We already have concluded that the ARS has been incorporated into the Lease, even though the Option Agreement was not. Second, Penn contends that there is no agreement to arbitrate Wilson's alleged fraud in inducing Penn to enter into the Option Agreement. (*See id.*; Counterclaim, ¶¶ 28-30). We agree, but find the argument irrelevant to the motion at hand. Wilson wishes to stay the Counterclaim and compel arbitration of whether it breached the Lease. Any other claims regarding the enforceability of the Option Agreement may be considered following the arbitration proceedings.

of the Lease itself, its provisions are subject to the arbitration clause.

Waiver

Penn also contends that Wilson waived its right to arbitration by failing to make its decision regarding whether to litigate or arbitrate its grievances at the earliest possible point. We find this argument persuasive.

The Federal Arbitration Act creates a presumption favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). However, this preference is not absolute. Arbitration provisions are simply contractual provisions, and, as such, may be waived, either implicitly or explicitly. *See St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co, Inc.*, 969 F.2d 585, 587 (7th Cir. 1992). As Wilson never explicitly waived its right to arbitrate, we must examine whether it did so implicitly.

Implicit waiver occurs when the party seeking to compel arbitration has taken action inconsistent with a desire to arbitrate. *Id.* at 588. If a contract provision is subject to arbitration and a party seeks a judicial resolution of a disagreement which falls within the scope of the arbitration agreement, that party waives its right to arbitration. *Id.* at 589. Thus, the central issue before us is whether Wilson has taken action inconsistent with its right to arbitrate. In order to answer this question, we look at what Wilson has asked this court to resolve and examine its actions throughout the legal proceedings in this court. Determining whether an action is inconsistent with a desire to arbitrate depends on "all the circumstances in a particular case." *Id.* at 590. Prejudice to the opposing party is one of those considerations, but is not dispositive. *Id.*

Seeking judgment from a nonarbitral tribunal constitutes a presumptive waiver of the right to arbitrate. *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995). Thus, if Wilson sought judgment from this court regarding the breach of contract claim it now seeks to

5

arbitrate it has waived its right to arbitrate that claim. This policy prevents the forum shopping made possible by arbitration clauses. *Id.* at 390; *Welborn Clinic*, 301 F.3d at 637. When deciding whether waiver has occurred, the court should consider whether the party seeking arbitration has done all it reasonably could to make the "earliest feasible determination" of which forum to proceed in, while considering the federal policy favoring arbitration. *Cabinetree*, 50 F.3d at 391; *Moses H. Cone*, 460 U.S. at 24-25.

In the case before us, Wilson did not file a breach of contract claim based on the Lease, but rather moved to specifically enforce the Option Agreement. As the Option Agreement was not subject to arbitration, Wilson did not act inconsistently with its right to arbitrate by seeking judgment from this Court regarding specific enforcement of the Option Agreement. In other words, simply by bringing suit against Penn to resolve the Option Agreement, Wilson did not act inconsistently with its right to arbitrate the Lease. The claims related to the Lease were first raised by Penn in its counterclaim, to which Wilson promptly responded, asserting its right to arbitrate as its second affirmative defense. Indeed, once Penn raised allegations of breach of the Lease in its counterclaim, Wilson replied in less than three weeks, arguing in its second affirmative defense that the counterclaim is subject to a mandatory arbitration clause. We find this action to be consistent with Wilson's right to arbitration because Wilson brought it to our attention at the earliest possible moment.

After filing its response to Penn's counterclaim but before filing its motion to compel arbitration, Wilson and Penn engaged in limited discovery and settlement attempts. These settlement attempts are not inconsistent with the right to arbitrate. The Seventh Circuit has held that such "preliminary negotiations concerning a settlement" do not waive the right to arbitrate. *Dickinson v. Heinold Secs., Inc.*, 661 F.2d 638, 641 (7th Cir. 1981). Such attempts at settlement allow the parties to resolve their dispute "without reference to an adjudicatory body." *Id.* This pronouncement indicates the Seventh

Circuit does not consider settlement negotiations necessarily to be inconsistent with the intention to arbitrate. And while the holding the Seventh Circuit has explained that filing a complaint in district court constitutes a request for judgment, thereby waiving a right to arbitrate, *see Grumhaus v. Comerica Secs., Inc.*, 223 F.3d 648, 651 (7th Cir. 2000) (explaining that), the allegations of breach were brought by Penn, not by Wilson in its complaint. As such, we conclude that Wilson did not waive its right to arbitrate those claims through settlement negotiations.

Penn also argues that by engaging in discovery for five months after receiving its counterclaim, Wilson has acted inconsistently with its right to arbitrate. We agree. While "no waiver of the right to arbitrate can occur from conducting discovery on non-arbitrable claims," *Dickinson*, 661 F.2d at 642, Wilson engaged in discovery regarding both its claim and Penn's counterclaim, the latter being subject to arbitration. The implication that it was testing the waters regarding litigation is supported by the fact that Wilson delayed five months before filing its motion to compel, during which time it actively engaged in discovery. While delay alone may not be decisive, Wilson's participation in the litigation process is. *See, e.g., Grumhaus*, 223 F.3d at 651 (six months of discovery and litigation found to be inconsistent with a desire to arbitrate); *St. Mary's*, 969 F.2d at 589 (conducting ten months of discovery and submitting a motion to dismiss held to be inconsistent with a desire to arbitrate); *Welborn Clinic*, 301 F.3d at 637 (delay accompanied by participation in litigation may constitute waiver); *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756-57 (7th Cir. 2002) (four months of litigation and participation in bankruptcy reorganization deemed a waiver). There is no apparent explanation for this delay other than that Wilson wished to see how the litigation process would proceed before it decided to arbitrate. Courts in the Seventh Circuit frown upon such attempts at forum shopping. *Welborn Clinic*, 301 F.3d at 637; *Cabinetree*, 50 F.3d at 390.

Wilson responds that part of its delay was due to attempts at settlement which were thwarted by Penn. While engaging in settlement may not waive a party's right to arbitration, significant delay after attempts at settlement coupled with participation in the litigation process may act as such a waiver. *See, e.g., Grumhaus*, 223 F.3d at 651. A settlement conference between Wilson and Penn was conducted on March 22, 2004. After the failure of the parties to resolve their differences, Wilson waited nearly two months before filing its motion to compel arbitration, during which time it actively engaged in discovery. We find such actions to be inconsistent with the Seventh Circuit's standard of requiring a party to make the "earliest feasible determination" of the forum. *Cabinetree*, 50 F.3d at 391. Accordingly, we find that Wilson has waived its right to arbitration.

For the reasons described above, we deny Wilson's motion to compel arbitration. Accordingly, there is no need to stay the counterclaim and we deny that motion as well. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated   8/27/04